IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 11-567 |
| | ) | |
| ELAINE A. BROWN, et al., | ) | Judge John H. Rich III |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER ON UNITED STATES' MOTION FOR DEFAULT JUDGMENT ENTRY,
FINAL JUDGMENT ENTRY, AND ORDER OF LIEN ENFORCEMENT AND SALE**

Before the Court is the UNITED STATES' MOTION FOR DEFAULT JUDGMENT

ENTRY, FINAL JUDGMENT ENTRY, AND ORDER OF LIEN ENFORCEMENT AND

SALE.  The Clerk of the Court entered the default of defendants A T T Trust, Appletree Trust,

Diane Marie Kelly individually and as trustee of ATT Trust, Norma Denise Menard individually

and as trustee of the Rock Solid Trust, Simonds Properties, Inc., and The Rock Solid Trust, on

March 22, 2012. On April 25, 2012,  the Clerk of the Court entered the default of defendants

Elaine A. Brown, individually and as Trustee of the Center of Town Road Realty Trust, and as

Trustee of the Edward and Elaine Brown Living Trust; Edward L. Brown, individually and as

Trustee of the Center of Town Road Realty Trust, and as Trustee of the Edward and Elaine

Brown Living Trust; Thomas Eugene Ouverson, individually and as Trustee of the TQS Trust;

Edward and Elaine Brown Living Trust; Center of Town Road Realty Trust; TQS Trust; David

Hatch Bernier; Michael Laraway; Robert Hall; Diane Marie Kelly, individually and as Trustee of

ATT Trust, and as Trustee of the Appletree Trust; Appletree Trust; and ATT Trust.  The Clerk of

the Court entered the default of defendant George Bernier on August 8, 2012.  The Court being

fully advised as to the premises, and for good cause shown, it is hereby,

**ORDERED**, **ADJUDGED, AND DECREED** that judgment by default is entered

against the following defendants: George Bernier, A T T Trust, Appletree Trust, Diane Marie

Kelly individually and as trustee of ATT Trust, Norma Denise Menard individually and as

trustee of the Rock Solid Trust, Simonds Properties, Inc., The Rock Solid Trust, Elaine A.

Brown, individually and as Trustee of the Center of Town Road Realty Trust, and as Trustee of

the Edward and Elaine Brown Living Trust; Edward L. Brown, individually and as Trustee of the

Center of Town Road Realty Trust, and as Trustee of the Edward and Elaine Brown Living

Trust; Thomas Eugene Ouverson, individually and as Trustee of the TQS Trust; Edward and

Elaine Brown Living Trust; Center of Town Road Realty Trust; TQS Trust; David Hatch

Bernier; Michael Laraway; Robert Hall; Diane Marie Kelly, individually and as Trustee of ATT

Trust, and as Trustee of the Appletree Trust; Appletree Trust; and ATT Trust.

**ORDERED**, **ADJUDGED, AND DECREED** that the United States has valid and

subsisting federal tax liens on all property and rights to property of defendants Elaine A. Brown

and Edward L. Brown, including their interest in the properties located at places commonly

known as 401 Center of Town Road, Plainfield, New Hampshire, hereinafter "Property A," and

27 Glen Road, West Lebanon, New Hampshire, hereinafter "Property B."

Property A is legally described as follows:

> A certain tract or parcel of land together with the buildings and improvements
> now or hereafter located thereon situate in Plainfield, Sullivan County, New
> Hampshire, as shown on a plan entitled "Location Survey, Goodwin Lot, Being
> Land of Land-East Corporation", drawn by Land East Corp./Atkinson-Davis
> Corp., dated April 2, 1980, and recorded at the Sullivan County Registry of
> Deeds at Plan File #2, Pocket #5, Folder #4, Plan No. 42. Said tract is more
> particularly bounded and described as follows:

2

Beginning at an iron pin set at the intersection of two stone walls at the common corner of the tract herein conveyed, and land now or formerly of Cecil Davis, and land now or formerly of Atkinson-Davis Corp.; thence running North 06° East a distance of 913 feet along said Atkinson-Davis Corp. land to an iron pin set at the end of said stone wall near a wire fence on the boundary of said Atkinson-Davis Corp. land; thence turning and running still along said Atkinson-Davis Corp. land and along said wire fence the following five courses and distances: North 12° East a distance of 162.2 feet to an iron pin set; thence North 06° East a distance of 100 feet to an iron pin set; thence North 08° East a distance of 100 feet to an iron pin set; thence North 11° East a distance of 100 feet to an iron pin set; thence North 09° East a distance of 100 feet to an iron pin set at the end of said wire fence at the common corner of the premises herein conveyed and said Atkinson-Davis Corp. land; thence turning and running along said Atkinson-Davis Corp. land the following seventeen courses and distances: South 54° 30" East a distance of 134 feet to an iron pin set; thence South 62° East a distance of 100 feet to an iron pin set; thence South 67° East a distance of 200 feet to an iron pin set; thence South 64° East a distance of 400 feet to an iron pin set; thence South 57° East a distance of 200 feet to an iron pin set; thence South 61° East a distance of 100 feet to an iron pin set; thence South 65° East a distance of 200 feet to an iron pin set; thence South 68° East a distance of 500 feet to an iron pin set; thence South 67° East a distance of 100 feet to an iron pin set; thence South 65° East a distance of 100 feet to an iron pin set; thence South 73° East a distance of 100 feet to an iron pin set; thence South 69° East a distance of 100 feet to an iron pin set; thence South 75° East a distance of 100 feet to an iron pin set; thence South 68° East a distance of 140 feet to an iron pin set; thence South 72° East a distance of 300 feet to an iron pin set; thence South 84° East a distance of 100 feet to an iron pin set; thence South 72° East a distance of 400 feet to an iron pin set at the end of a wire fence at the common corner of said Atkinson-Davis Corp. land and land now or formerly of Davis & Symonds Lumber Co.; thence turning and running along said Davis & Symonds Lumber Co. land and partially along said wire fence the following sixteen courses and distances: South 39° West a distance of 154 feet to an iron pin set; thence South 10° West a distance of 100 feet to an iron pin set; thence South 14° 30" West a distance of 100 feet to an iron pin set; thence South 38° West a distance of 318 feet to an iron pin set; thence South 30° West a distance of 100 feet to an iron pin set; thence South 32° West a distance of 100 feet to an iron pin set; thence South 10° West a distance of 100 feet to an iron pin set; thence South 36° West a distance of 100 feet to an iron pin set; thence South 59° West a distance of 100 feet to an iron pin set; thence South 74° West a distance of 79 feet to an iron pin set; thence South 63° West a distance of 100 feet to an iron pin set; thence South 69° West a distance of 100 feet to an iron pin set; thence South 89° West a distance of 85 feet to an iron pin set; thence South 69° West a distance of 80 feet to an iron pin set; thence South 60° West a distance of 100 feet to an iron pin set; thence South 46° West a distance of 200 feet to an iron pin set at a corner of wire fences at the common corner of said Davis & Symonds Lumber Co. land and land now or formerly of Davis, as shown on said Plan; thence turning and running along said Davis land and partially along said wire fence the following six courses and distances; North 48° West a distance of 91 feet to an iron pin set; thence North 40° West a distance of 100 feet to an iron pin set; thence North 04° West a distance of 65 feet to an iron pin set; thence North 82° West a distance of 134.5 feet to an iron pin set; thence North 58° West a distance of 100 feet to an iron pin set; thence North 04° West a distance of 97.5 feet to an iron pin set at the end of said wire fence near the end of a stone wall on the boundary of said Davis land;

thence turning and running along said stone wall and still along said Davis land the following five courses and distances; North 61° West a distance of 470 feet to an iron pin set; thence North 67° West a distance of 100 feet to an iron pin set; thence North 80° West a distance of 100 feet to an iron pin set; thence North 84° 30" West a distance of 100 feet to an iron pin set; thence South 28° West a distance of 87 feet to an iron pin set; thence turning and running still along said Davis land and still along said stone wall and then along a wire fence North 74° West a distance of 113 feet to an iron pin set in said wire fence on the boundary of said Davis land; thence turning and running still along said Davis land and along said wire fence the following five courses and distances: North 69° West a distance of 100 feet to an iron pin set; thence North 66° West a distance of 100 feet to an iron pin set; thence North 63° West a distance of 100 feet to an iron pin set; thence North 70° West a distance of 100 feet to an iron pin set; thence North 64° West a distance of 100 feet to an iron pin set at the end of said wire fence near the end of a stone wall on the boundary of said Davis land; thence turning and running along said stone wall and still along said Davis land the following two courses and distances: North 16° 30" West a distance of 144 feet to an iron pin set in said stone wall; North 66° West a distance of 300 feet to the point of beginning.  Said parcel contains 103 acres, more or less, according to said Plan, which is hereby incorporated herein by reference.

ALSO CONVEYING HEREIN, with QUITCLAIM covenants, all right, title and interest in and to a certain easement over land in Plainfield, Sullivan County, New Hampshire, presently or formerly owned by Cecil Davis on the northerly side of the highway known as the Hill Road leading from Plainfield to Meriden, which is also known as Farnum Road.  Said easement may be more particularly bounded and described as follows:

An easement and right-of-way for the passage of men vehicles over a strip of land 25 feet in width from a break in the stone wall, which forms a part of the southerly boundary near the southwest corner of land which the grantor herein is conveying to the grantees hereinabove described, and crossing the so-called southwest mowing on the said Davis property to the northerly right-of-way line of said Hill Road.

SUBJECT TO Current Use Taxation by the Town of Plainfield, recorded at the Sullivan County Registry of Deeds on July 17, 1981 at Book 685, Page 161.


Property B is legally described as follows:

A certain tract of land, together with the buildings and improvements thereon, located on the northerly side of Glen Road in West Lebanon, in the City of Lebanon, New Hampshire, as shown on a Plan entitled "Annexation Plan, Former Merrihew Parcel to Former Welch Parcel, Bayne Stevenson, Glen Road, West Lebanon, N.H., Scale 1" = 20', Date Sept. 11, 1985, Last revised November 6, 1990, Proj. No. 100985, K.A. LeClair Assoc., Inc., Hanover, N.H."  which Plan is recorded in the Grafton County Registry of Deeds as Plan No. 6606.  The single tract conveyed herein is show as consisting of two areas, the first containing approximately 34,200 square feet or 0.78 acre; and the second containing approximately 8,230 or 0.19 acre.  Said tract is shown on said Plan as bounded and described as follows:

Beginning at an iron rod existing at a point where the northerly sideline of Glen Road intersects with the common boundary of the premises herein conveyed and property now or formerly of Netta J. Gilson; Thence North 58° 43' West along the northerly sideline of Glen Road a distance of 16.0 feet to an iron pipe existing along said northerly sideline of Glen Road; Thence North 63° 34' 30" West along the northerly sideline of Glen Road a distance of 125.8 feet to a stone bound existing along said northerly sideline of Glen Road;
Thence North 68° 50' West along the northerly sideline of Glen Road a distance of 33.0 feet to an iron rod set along said northerly sideline of Glen Road; Thence westerly along the northerly sideline of Glen Road a distance of 222 feet, more or less, to an iron rod set at a point where the northerly sideline of Glen Road intersects with the common boundary of the premises herein conveyed and property now or formerly of Block Plant, Inc.; Thence North 05° 12' East along the common boundary of the premises herein conveyed and property now or formerly of Block Plant, Inc. a distance of 57.4 feet to an existing iron rod; Thence North 10° 34' West along the common boundary of the premises herein conveyed and property now or formerly of Block Plant, Inc. a distance of 46.4 feet to an existing granite bound; Thence North 79° 04' East along the common boundary of the premises herein conveyed and property now or formerly of Block Plant, Inc. a distance of 153.9 feet to an existing granite bound; Thence South 65° 23' East along the common boundary of the premises herein conveyed and property now or formerly of Block Plant, Inc. a distance of 123.4 feet to an existing granite bound; Thence South 05° 31' West along the common boundary of the premises herein conveyed and property now or formerly of Block Plant, Inc. a distance of 48.0 feet to a set iron rod; Thence continuing South 05° 31' West along the common boundary of the premises herein conveyed and property now or formerly of Block Plant, Inc. a distance of 20.0 feet to an existing iron pipe; Thence South 55° 23'30" East along the common boundary of the premises herein conveyed and property now or formerly of Block Plant, Inc. a distance of 93.6 feet to a set iron rod; Thence continuing South 55° 23'30" East along the common boundary of the premises herein conveyed and property now or formerly of Block Plant, Inc. a distance of 98.6 feet to an existing iron pipe; Thence South 58° 18' West along the common boundary of the premises herein conveyed and property now or formerly of Netta J. Gilson a distance of 43.8 feet to the point of beginning. Containing 42,430 square feet, more or less, or 0.97 acre, more or less.

Vehicular and pedestrian travel easement. The premises herein conveyed are subject to a perpetual easement for vehicular and pedestrian travel conveyed by Easement Deed from Bayne Stevenson d/b/a The BaySon Company to Arthur Whitcomb, Inc. and Block Plant, Inc. dated November 22, 1985, and recorded in the Grafton County Registry of Deeds at Book 1575, Pages 341-342, and by Deed of Easement from Timothy B. Merrihew and Nancy A. Merrihew to Arthur Whitcomb, Inc. dated September 28, 1981 and recorded in the Grafton County Registry of Deeds at Book 1434, Pages 30-31.  Reference is made to said Easement Deed from Bayne Stevenson d/b/a The BaySon Company to Arthur Whitcomb, Inc. and Block Plant, Inc., and said Deed of Easement from Timothy B. Merrihew and Nancy H. Merrihew to Arthur Whitcomb, Inc. for a metes and bounds description of the boundaries of each respective easement. The area of easement conveyed by Easement Deed of Bayne Stevenson d/b/a The BaySon Company and Arthur Whitcomb, Inc. and Block Plant, Inc. is shown on the above described Plan as a shaded, triangular area situated adjacent to and westerly of the easement area conveyed by Deed of Easement from Timothy B. Merrihew and Nancy A. Merrihew to Arthur Whitcomb, Inc.  With

respect to the latter easement granted by Timothy B. Merrihew and Nancy A. Merrihew to Arthur Whitcomb, Inc. by Deed of Easement dated September 28, 1981, Arthur Whitcomb, Inc., its successors and assigns convenanted with the grantor, his heirs, successors, administrators and assigns, that the easement described therein shall not be used for truck traffic (excluding pickups and vehicles of similar type, characteristic and description) between the hours of 7:00 p.m. and 7:00 a.m.

The above described vehicular and pedestrian easements are to be used in common by the owner of the premises herein conveyed, its successors and assigns, and the owners of the adjoining property of Arthur Whitcomb, Inc. and/or Block Plant, Inc., their successors and assigns.

Subject to the effect, if any, of a utility right of way described as being located "off the easterly end of the aforementioned premises of the Grafton County Electric Company, now called the Granite State Electric Company" which right of way is described in a warranty deed from Timothy B. Merrihew and Nancy Merrihew to Bayne Stevenson d/b/a The BaySon Company dated October 28, 1983 and recorded in the Grafton County Registry of Deeds at Book 1488, Page 724.

Both Property A and Property B are hereinafter referred to as the "Properties" when aggregated.

**ORDERED**, **ADJUDGED, AND DECREED** that the federal tax liens for the liabilities of defendants Elaine A. Brown and Edward L. Brown shall be enforced upon the Properties, and that said Properties be sold in a judicial sale, according to law, free and clear of any right, title, lien, claim or interest of any of the defendants herein, and that the proceeds of the sale be distributed to such parties in such order as set forth below.  The Properties shall be sold 'as is' condition.

**ORDERED FURTHER,** that the United States' tax lien for the liability that is the subject of this judgment may be enforced and the United States Marshal for this District shall, at a date and time to be determined by the U.S. Marshal, sell, free and clear of all right, title and interest of all parties to this action, their heirs, successors and assigns, the Properties, at public auction at the United States District Court, District of New Hampshire, 55 Pleasant Street, Room 110 Concord, New Hampshire 03301.

**ORDERED FURTHER,** that the terms and conditions of the sale shall be as follows: Property A and Property B will be offered for sale on the same day and hour.  The sales will be made at the United States District Court, District of New Hampshire, 55 Pleasant Street, Room 110 Concord, New Hampshire 03301, though Property A and Property B will be offered for sale separately.  Property A will be offered at a minimum bid price of $250,000.  Property B will be offered at a minimum bid price of $507,500.  Each of the respective Properties will be sold to the party making the highest bid.  At the time of the sale, the highest bidder for each of the respective Properties shall deposit with the U.S. Marshal, by certified or cashier's check, not less than the sum of $50,000 except that if the United States is the highest bidder, no such deposit shall be required.  Before being permitted to bid at the sale of the Properties, bidders shall display to the U.S. Marshal, or his representative, a cashiers check or certified check to demonstrate that the bidder is able to comply with this requirement.  No bids will be received from any person who has not presented proof that, if that person is the successful bidder, that person can make the deposit required by this judgment and order of lien enforcement and sale. Within 7 days after the sale, the purchaser (unless such purchaser is the United States) shall pay to the U.S Marshal the balance of the amount of his bid by certified or cashier's check.  Upon receipt of such payment, the Marshal shall notify counsel for the United States, who shall file a motion for confirmation of the sale.  Provided that the Court enters an order confirming the sale, the U.S. Marshal shall deliver to the purchaser a deed to the Property.  The deed shall be issued in the name of the bidder or his designee.  If the purchaser shall fail to make such payment, the purchaser's deposit shall be forfeited and retained as part of the proceeds of sale and the U.S. Marshal shall proceed with another sale as set forth herein.[1]

---

[1]  From any such forfeited deposit, the United States Marshal shall deduct his expenses and then shall add the

**ORDERED FURTHER**, that the U.S. Marshal shall deduct his expenses in selling Property A, and remit the remainder to the Clerk of the Court for the United States District Court the District of New Hampshire.  The clerk shall distribute the proceeds of sale of Property A as follows:  First, to satisfy any remaining costs of the sale, including advertising and other expenses; second, to satisfy any outstanding real property taxes within the meaning of 26 U.S.C. Section 6323(b)(6); third, to satisfy the claims of the United States; to the extent that any sale proceeds remain after the satisfaction of the judgment of the United States, such proceeds shall be paid to the Court because all other defendants have disclaimed or have been defaulted.

**ORDERED FURTHER**, that the U.S. Marshal shall deduct his expenses in selling Property B, and remit the remainder to the Clerk of the Court for the United States District Court the District of New Hampshire.  The clerk shall distribute the proceeds of sale of Property B as follows: First, to satisfy any remaining costs of the sale, including advertising and other expenses; second, to satisfy any outstanding real property taxes within the meaning of 26 U.S.C. Section 6323(b)(6); third, to satisfy the claims of the United States; to the extent that any sale proceeds remain after the satisfaction of the judgment of the United States, such proceeds shall be paid to the Court because all other defendants have disclaimed or have been defaulted.

**ORDERED FURTHER** that additional terms and conditions of the sale of the Properties are as follows:

1. The U.S. Marshal shall cause notice of the sale to be published once a week for at least four weeks prior to the sale in at least one newspaper of general circulation in this judicial

---

remainder of the forfeited deposit to the proceeds of any subsequent sale of Property A or Property B to be distributed with the proceeds of the subsequent sale in accordance with this Judgment and Order.

district, in which notice there shall be set forth the date, time and place of the sale, the address of the Properties and the terms and conditions of the sale in accordance with 28 U.S.C. §§2001 and 2002.

2. The U.S. Marshal for the District of New Hampshire, or such representative as he may appoint or employ, is authorized and directed under 28 U.S.C. §§2001 and 2002 to offer for public sale and to sell the respective Properties described above.

3. The U.S. Marshal, the Internal Revenue Service, Counsel for the United States, and/or any representatives thereof are authorized to have free access to the realty and to take all actions necessary to preserve the realty, including but not limited to, retaining a locksmith or other person to change or install locks or other security devices on any part of the realty, until the deed to the realty is delivered to the ultimate purchaser.  Nothing in this Order shall limit the abilities of local or New Hampshire State Police forces, or those law enforcement officials of the United States, to patrol or secure the Properties.

4. The defaulted defendants or anyone else on or otherwise occupying the Properties shall vacate the Properties, taking with him/them his/their personal property within 7 days from the date this order is entered (but leaving all improvements, buildings, fixtures (including all kitchen and laundry appliances), and appurtenances to the real property). If any person occupying the Properties fails or refuses to leave and vacate the realty by the time specified herein, the U.S. Marshal and his deputies and the IRS are authorized and directed to take all actions that are reasonably necessary, including, if necessary, the use of reasonable force, to bring about the ejectment of those persons.  If any person fails or refuses to remove his or her personal property from the Properties by the time specified herein, the property remaining in or on the Properties thereafter is deemed forfeited and abandoned, and the Marshal and his deputies are authorized to

remove it and dispose of it in any manner the Marshal sees fit, including sale, in which case the proceeds of the sale shall be applied under the same guidelines as described herein for the proceeds of the sale of the respective Property from which the personal property was seized. After entry of this Order, the U.S. Marshal shall enter the Property and post upon said Properties in an open and visible manner, a copy of this Order at the time thereof, making the Court's Order open and notorious.  The U.S. Marshal for the District of New Hampshire, or such representative as he may appoint or employ, is authorized to post any other signs he may deem necessary, on the gate or other conspicuous location on or near the Properties.  The United States, and its agents, are authorized to destroy any third-party personal medical records found on the property to protect the privacy of individuals named therein.

The U.S. Marshal is authorized and directed to take any and all necessary actions, including but not limited to the use of reasonable force, to enter and remain on the premises, which includes, but is not limited to, the land, the buildings, vehicles and any structures located thereon, for the purpose of executing this Order.  The U.S. Marshal is further authorized and directed to arrest and/or evict from the premises any and all persons who obstruct, attempt to obstruct, or interfere or attempt to interfere, in any way with the execution of this Order.

5. The sale shall be subject to building lines if established, all laws, ordinances, and governmental regulations (including building and zoning ordinances), affecting the premises, and easements and restrictions of record, if any.

6. If a bid for the Properties is not received and confirmed in an amount equal to or in excess of the minimum bid price, the Marshal shall advertise a second sale of the Properties and carry out another public sale, without further order of the Court.  If a second sale is unsuccessful,

10

the U.S. Marshal shall inform Counsel for the United States, who shall return for further order of the Court.

7. Until the Properties are sold, the defaulted defendants shall not commit waste against the Properties, nor shall they cause or permit anyone else to do so.  The defaulted defendants shall not record any instruments, publish any notice, or take any action (such as running newspaper advertisements) that may directly or indirectly tend to adversely affect the value of the Properties or that may tend to deter or discourage potential bidders from participating in the public sale of the Properties.

8. When the sale of the respective Properties is confirmed by this Court, the recorders' offices serving the areas in which the subject Properties are located shall permit transfer of the realty to be reflected on those counties' registries of deeds and/or title.

**IT IS SO ORDERED**:

Dated:  June 5, 2013                           /s/George Z. Singal
                                                        United States District Judge