UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket no. 1:11-cv-567-GZS |
| | ) | |
| ELAINE BROWN, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DISTRIBUTION OF PROCEEDS**

Before the Court are two motions filed by the Town of Plainfield ("Plainfield"): (1) the Motion for Distribution of Proceeds of Judicial Sale (ECF No. 72) and (2) the Motion for Hearing (ECF No. 88). Additionally, the United States opposed Plainfield's Motion for Distribution in part by filing a cross-motion regarding the distribution of proceeds (ECF No. 77). The Court held a telephonic conference of counsel on December 27, 2016. Thereafter, the Court received supplemental briefing from Plainfield and the United States (ECF Nos. 91-94). Having considered all of the briefing, exhibits, and the entire record, the Court now concludes that no further hearing is necessary and DENIES the Motion for Hearing (ECF No. 88). The Court GRANTS IN PART AND DENIES IN PART both the Town's Motion for Distribution of Proceeds of Judicial Sale and the Cross-Motion by the United States, as explained herein.

I.     **PROCEDURAL HISTORY**

This case began with the United States' filing of a civil forfeiture complaint on December 7, 2011.¹  On June 5, 2013, this Court ordered that the United States' valid federal tax liens be enforced through the sale of two pieces of real property, one located in Plainfield, New Hampshire ("Property A" or the "Plainfield Property") and the other located in Lebanon, New Hampshire ("Property B" or the "Lebanon Property").  See Order on United States Motion for Default Judgment Entry, Final Judgment Entry and Order of Lien Enforcement and Sale (ECF No. 58). Pursuant to this Order, the Plainfield Property would be sold at auction "on the same day and hour" as the Lebanon Property with a minimum bid of $250,000 on Property A and a minimum bid of $507,500 on Property B.  Id. at 7.  The same Order indicated:

> [T]he U.S. Marshal shall deduct his expenses in selling [each property], and remit the remainder to the Clerk of the Court . . . .  The clerk shall distribute the proceeds of sale . . . as follows:  First, to satisfy any remaining costs of the sale, including advertising and other expenses; second, to satisfy any outstanding real property taxes within the meaning of 26 U.S.C. Section 6323(b)(6); third, to satisfy the claims of the United States; to the extent that any sale proceeds remain after the satisfaction of the judgment of the United States, such proceeds shall be paid to the Court because all other defendants have disclaimed or have been defaulted.

Id. at 8.  In the summer of 2014, an auction conducted pursuant to the Court's orders yielded no bidders.

On July 28, 2015, the Court entered an Amended Order of Sale (ECF No. 69).  This June 28, 2015 Order dropped the minimum bid price on the Plainfield Property to $125,000 and the minimum bid on the Lebanon Property to $250,000.  See Am. Order of Sale (ECF No. 69) at 7.  In relevant part, the Amended Order of Sale, which was entered without objection, ordered that sale

---

¹ For further background on the criminal cases that preceded this action, the Court directs interested readers to United States v. Brown, 669 F.3d 10, 14-16 (1st Cir. 2012) and United States v. Gerhard, 615 F.3d 7, 12-18 (1st Cir. 2010).

2

proceeds be deposited with the Clerk of Court and then distributed, after confirmation of the sale, according to the following priorities:

> a. First, by agreement of the parties, to the Town of Plainfield, New Hampshire to repay the costs of advertising the first unsuccessful sale of the property.
>
> b. Second, to the United States Treasury, for the expenses and sale, including any expenses incurred to secure or maintain the property. Should the Town of Plainfield credit bid at the sale, it shall be required to reimburse the United States, in cash within a reasonable time after the sale, for all of the expenses of the sale, including any expenses incurred to secure or maintain the property.
>
> d. Third, to the Town of Plainfield, New Hampshire, or other local taxing authority, for real property taxes and other local assessments due and owing, if any, in accordance with 26 U.S.C. § 6323(b)(6).
>
> e. Fourth, to the plaintiff United States of America to be applied toward the federal tax liens securing the tax liabilities of defendants Edward and Elaine Brown.
>
> f. Fifth, to the Clerk of the United States District Court for the District of New Hampshire pending a further determination of entitlement to any remaining proceeds.

Am. Order of Sale (ECF No. 69) ¶ 8.[2] Additionally, this Amended Order of Sale authorized the Internal Revenue Service Property Appraisal and Liquidation Specialists ("PALS") to "dispose of [any personal property remaining on the two properties] in any manner they see fit, including sale, in which case the proceeds of the sale are to be applied to the liens of the United States." Am. Order of Sale (ECF No. 69) at 10.

An auction was held pursuant to this Amended Order on October 22, 2015, at which the Plainfield Property sold for $205,000 and the Lebanon Property sold for $415,000. On December 23, 2015, the Court confirmed this sale, which allowed for the conveyance of a deed to the buyer of both properties. See Order Confirming Judicial Sale (ECF No. 71). Notably, the Town of Plainfield, the initial movant on the motions currently pending before this Court, joined in the

---

[2] The Court notes that the omission of a sub-paragraph (c) in the just-quoted portions of paragraph 8 of the Amended Order of Sale is a typographical error that appears in the original order.

3

request for confirmation; in doing so, Plainfield acknowledged that sale proceeds would be distributed at a later date because the United States was still calculating its expenses of sale. See Joint Motion for Entry of Attached Order Confirming Sale (ECF No. 70) at 2-3.

Before turning to the disputed matters regarding the distribution of the Plainfield Property proceeds, it is important to note what is not in dispute: First, the United States and the two municipalities, Plainfield and Lebanon, agree that the July 28, 2015 Amended Order of Sale (ECF No. 69) provides the framework for distribution. Second, as it relates to Property B in Lebanon, there is no dispute as to how the $415,000 in sale proceeds should be distributed under that framework.[3] Thus, the Court, by this Order, is distributing the Lebanon Property proceeds in accordance with the United States' proposed order (ECF No. 77-9).

## II. DISCUSSION

The Court turns its attention to Property A. At the outset, the United States and Plainfield agree that pursuant to Paragraph 8(a) of the Amended Order of Sale, the Court should first disburse $1,370.62 to Plainfield; said amount reflecting Plainfield's costs of advertising the first unsuccessful sale of the property. After that distribution, $203,629.38 remains from the sale of the Plainfield property.

The United States seeks $173,462.64 pursuant to Paragraph 8(b) of the Amended Order of Sale, which indicates that the second priority for disbursement of the Property A sale proceeds is "the United States Treasury, for the expenses and sale, including any expenses incurred to secure or maintain the property." Am. Order of Sale (ECF No. 69) at 11. Plainfield asserts objections to

---

[3] The Town of Lebanon filed a response to Plainfield's pending Motion for Distribution indicating that they had no objections to the breakdown of the costs but joined in Plainfield's request that sales proceeds be distributed in accordance with the Amended Order of Sale. See Lebanon Response (ECF No. 73) at 1-2.

a majority of these expenses and indicates that the reimbursement due to the United States under Paragraph 8(b) should total only $47,164.20.  See Plainfield Response to Cross-Motion (ECF No. 81) at 7.  Both the United States and Plainfield acknowledge whatever amounts are not paid to the United States Treasury for "the expenses and sale" are to be disbursed to the Town of Plainfield in accordance with Paragraph 8(d) of the Amended Order of Sale.[4]  Simply put, the remaining dispute involves whether $126,298.44 is to be disbursed to the United States under Paragraph 8(b) or to Plainfield under Paragraph 8(d).[5]

After reviewing the parties' initial submissions regarding distribution of the remaining sale proceeds for the Plainfield Property, the Court held a conference of counsel and requested briefing on two specific legal issues:  (1) whether an expense connected to the "expenses and sale" must be reasonable under Paragraph 8(b) of the Amended Order of Sale; and (2) which side bears the burden of proof on any reasonableness determination.  Ultimately, neither the supplemental briefs nor the Court's own research has provided clear answers to these two issues.

With respect to the standard required for an expense to be deemed reimbursable under Paragraph 8(b) of the Amended Order of Sale, the Court agrees with the United States that the "plain language" of the Amended Order of Sale does not require that a particular expense be reasonable or appropriate.  U.S. Supp. Brief (ECF No. 92) at 4-5.  Likewise, the Court finds the United States' argument that Plainfield's reasonableness objections are subject to waiver

---

[4] As of December 15, 2015, Plainfield's tax lien totaled $232,661.26.  See 11/9/15 Halleran Aff. (ECF No. 91-4).

[5] To the extent that some of Plainfield's submissions suggest that it more broadly objects to any disbursement pursuant to Paragraph 8(b) of the Amended Order of Sale unless and until it is allowed discovery and a full hearing, the Court considers those broader objections waived based on the representations made by Attorney Schuster to the Court during the December 27, 2016 conference of counsel.  See U.S. Supp. Response Brief (ECF No. 94) at 6-9.  Even if the Court did not view these objections as waived, the Court concludes that additional discovery on the issue of expenses is not warranted and would not yield any significant adjustment in the distribution of proceeds.

somewhat compelling.[6]  See id. at 7.  However, Section 7403 ultimately empowers the Court in ordering a judicial sale "to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property" and to "decree . . . a distribution of the proceeds of such sale according to the findings of the court in respect to the interest of the parties and of the United States." 26 U.S.C. § 7403(c).  Moreover, the Amended Order of Sale, like any court order, must ultimately be construed and administered "to secure the just, speedy, and inexpensive determination" of this matter.  See generally Fed. R. Civ. P. 1.  In the Court's view, construing Paragraph 8(b) of the Amended Order of Sale such that the Court would be required to allow the reimbursement of any documented expense—even one that was clearly unreasonable in light of the need to secure and maintain the premises—would not serve the interests of justice.[7]  In short, although the Amended Order of Sale does not contain any explicit requirement that expenses be reasonable or appropriate, the Court assumes without deciding that the Amended Order of Sale should be construed to give the Court discretion to limit reimbursement for expenses that the Court finds unreasonable or unconnected to the goals of securing and maintaining the Plainfield Property for sale.

With respect to the burden of proof, the Court similarly assumes without deciding that the United States bears the burden of proof, given its status as the Plaintiff in this civil forfeiture

---

[6] The Court notes that Paragraph 8(b) contemplated that Plainfield might credit bid on Property A.  See Am. Order of Sale (ECF No. 69) at 11 ("Should the Town of Plainfield credit bid at the sale, it shall be required to reimburse the United States, in cash within a reasonable time after the sale, for all of the expenses of the sale, including any expenses incurred to secure or maintain the property.")  Given this provision, Plainfield certainly could have inquired as to the approximate amount of expenses prior to the auction.  Additionally, Plainfield consented to a minimum bid price of $125,000, which was far less than its existing tax lien.

[7]  The United States' analogizes the Amended Order of Sale to a negotiated stipulation or contract, but this analogy falls short when the document memorializing the "agreement" of the parties is a signed court order.  See U.S. Supp. Brief at 4-5.  Although "[c]ourts will not read language into a contract where it does not appear," a court necessarily retains greater discretion when reading and implementing its own signed order.  See In re New Seabury Co. Ltd. P'ship, 450 F.3d 24, 35 (1st Cir. 2006) (additional citations omitted).

action.[8]  See 26 U.S.C. §§ 7403 & 7491.  Additionally, as the party tasked with supervising the maintenance and sale of the Plainfield Property and now seeking reimbursement, it is logical that the United States bear the burden of proving that expenses were reasonable and connected to the maintenance and sale of the premises.  That said, placing the burden on the United States does not mandate that the Court conduct an evidentiary hearing.  As the United States pointed out, it is common for such distributions to be determined without an evidentiary hearing.  See U.S. Supp. Brief (ECF No. 92) at 8 (collecting cases).  In the Court's assessment, Plainfield has not come forward with a proffer that calls into question the reliability of the submitted exhibits or the credibility of the affiants and declarants presented by the United States.  In short, the Court concludes that an evidentiary hearing is not necessary and would not serve the interests of achieving a just, speedy, and inexpensive determination of the distribution questions raised by the pending motions.

Proceeding on the assumption that the United States bears the burden of proving that any challenged expenses are reasonable and connected to the sale, security, and maintenance of the Plainfield Property, the Court examines the specific objections asserted by Plainfield asking whether the preponderance of the evidence supports each expense.

**Plainfield's Specific Objections**

After the United States filed its receipts and other exhibits in support of its claim for $173,462.64 in expenses for sale and maintenance (ECF Nos. 77-1–77-7 & 78), Plainfield submitted several specific objections.  See Plainfield Response to Cross-Motion (ECF No. 81) at

---

[8] Ultimately, on the record presented, the Court concludes that the allocation of the burden of proof would not change the Court's ruling on Plainfield's specific objections.

7

2-7. At the December 27, 2016 telephone conference, the Court confirmed that to the extent that these objections remained outstanding, they were the only remaining matters in dispute.[9] The Court considers each of those outstanding objections in turn.

### (1) Propane and Maintenance Expenses Incurred Prior to July 7, 2009

Plainfield objects to the United States seeking reimbursement for out-of-pocket expenses incurred prior to the filing of this action. Specifically, Plainfield has compiled ten invoices totaling $6,273.96, which it asserts cover expenses incurred for maintaining the Plainfield Property prior to the United States bringing this civil forfeiture action. See Plainfield Response (ECF No. 81) at 6 & Ex. 9 (ECF No. 81-9). The compiled invoices reflect dates between November 7, 2007 and July 6, 2009; all of which pre-date the December 2011 filing of this action.

The Court takes judicial notice of the fact that during the time period in question there were related criminal matters pending. See United States v. Riley et al., D.N.H. Docket # 1:07-cr-189-GZS & United States v. Brown et al., D.N.H. Docket # 1:09-cr-30-GZS. As a result of those criminal matters, the Plainfield Property was in "administrative custody" and under the exclusive control of the United States. Kennedy Decl. (ECF No. 87-1) ¶ 4. This civil forfeiture action was filed after both of those criminal cases were concluded. However, even after the filing of this action, concerns remained regarding how to safely prepare the Plainfield Property for sale. See, e.g., U.S. Mot. for Extension of Time (ECF No. 58) at 1 & Notice of Sale (ECF No. 57-2) at 2-3 (disclosure regarding explosive devices on Plainfield Property).

---

[9] To the extent that Plainfield's initial opposition raised an additional specific objection related to $205.50 paid to the Lebanon Police Department, the Court confirmed at the conference that this sum was not included in the $173,462.64 sought by the United States. Thus, the Court deems this specific objection moot. See Plainfield Response (ECF No. 81) at 6; U.S. Reply (ECF No. 87) at 5.

The Amended Order of Sale (ECF No. 69) does not put any explicit time limit on the "expenses incurred to secure or maintain the property." Id. at 11.  Likewise, Plainfield has not provided the Court with any citation to support the notion that the United States is barred from seeking reimbursement of expenses that pre-date the filing of a civil forfeiture action.  In the absence of statutory authority or language in the Amended Order of Sale, the Court finds that there is nothing to categorically bar the United States from seeking reimbursement for expenses to secure and maintain the Plainfield Property that were incurred prior to the filing of this civil forfeiture case but while the property was subject to seizure and control of the United States.

Quite simply, the "unique circumstances" of the Brown case gave rise to special security concerns at the Plainfield Property.  Kennedy Decl. (ECF No. 87-1) at ¶¶ 5-7.  In the Court's assessment, absent the maintenance covered by these ten invoices, the Plainfield Property would not have been secure or adequately maintained to allow for later civil forfeiture.  Ultimately, the Plainfield Property would have been auctioned for far less than $205,000 if no basic maintenance had occurred in the 2007 to 2009 time period.  Thus, the Court readily concludes that it was reasonable and appropriate for the United States to undertake the actions covered by these ten invoices to secure and maintain the Plainfield Property.  Plainfield's objection is overruled and the Court will allow the United States to be reimbursed under Paragraph 8(b) for these ten invoices.

**(2) Dan LePan Services**

The United States paid a total of $40,860 to Dan LePan Services for a variety of property maintenance services, including plowing, sanding, driveway maintenance, one occasion of lawn maintenance, and some window repair.  These invoices cover expenses incurred between January 1, 2008 and March 4, 2015.  See Ex. 2 (ECF No. 81-2).

Plainfield objects to the plowing and sanding charges totaling $32,200. The invoices supporting these charges show that LePan Services plowed the driveway 87 times during this time period charging $200 for each plowing and $200 for each sanding. Plainfield indicates that the reimbursable amount should be reduced by $25,700; a reduction that Plainfield reaches by estimating that the driveway plowing should have cost a total of $5,000 (rather than the requested $17,400) and that the driveway sanding should have cost $1,500 (rather than the requested $14,800).

In arguing for these smaller reimbursements, Plainfield proffers the Declaration of Stephen Halleran, who is the Plainfield Town Administrator. Halleran asserts that based on his conversations with unidentified local contractors the average cost to plow the Plainfield Property would be $100 per visit. Halleran similarly asserts that sanding should cost only $100 per visit and would only be necessary in cases of "unusual weather resulting in an ice build-up." Halleran Decl. (ECF No. 81-10) ¶¶ 3-6.

The United States counters Plainfield's objection regarding the plowing and sanding charges with the Declaration of Michael DeSousa, the contractor "responsible for incurring and monitoring the expenses to maintain and preserve the [Plainfield] Property" from the time of its seizure until August 2012. DeSousa Decl. (ECF No. 87-2) ¶¶ 2 & 3. According to DeSousa, plowing and sanding "were necessary to allow law enforcement access to the [Plainfield] Property in the event of break-in or fire" as well as "to conduct inspections." Id. ¶ 6. He also indicates that LePan was only authorized to sand and plow when more than three inches of snow had accumulated and that each invoice submitted certified that more than three inches of snow had accumulated prior to plowing and sanding. Id. ¶ 7; see also Minoughan Decl. (ECF No. 87-3) ¶ 3. With respect to the rate paid for plowing and sanding, DeSousa explains that the assumed hazards

of the Plainfield Property resulted in higher quotes for work on the property.  After conducting a price analysis, DeSousa concluded that LePan's rates "were fair, reasonable, and superior to those of the other vendors."  DeSousa Decl. (ECF No. 87-2) ¶ 5.  The Court finds DeSousa's explanation of the plowing and sanding charges credible and notes that nothing submitted by Plainfield calls into question the credibility of Mr. DeSousa or Mr. LePan.  As a result, the Court overrules this objection and will allow the United States to be reimbursed for the full $40,860 paid to Dan LePan Services.

### (3) Coady's Towing

The United States incurred $1,500 in charges to remove various large items from the property (e.g., a boat, a motorcycle, a utility trailer) in preparation for the second auction.  Plainfield argues that removal of these items "was not necessary for the sale of the real property but rather concerned the efforts by the United States to recoup costs by selling personal property."  Plainfield Response (ECF No. 81) at 3.

Proffered receipts show two charges for $750 associated with towing that took place on August 25, 2015, and list descriptions of the items removed.  See ECF No. 77-7 at 34-35.  Roger Sweeney, an IRS Property Appraisal and Liquidation Specialist assigned to oversee the sale and maintenance of the Plainfield Property, indicates in his sworn declaration that these items were in poor condition, blocked access to the garage, and that the boat removed had "nesting rats."  Sweeney Decl. (ECF No. 87-4) ¶ 12.  As already noted, the Plainfield Property did not sell at the first auction when these items were present.

The Court concludes that the record amply supports including this $1,500 expense among the expenses that may be reimbursed under Paragraph 8(b).  Plainfield's objection is overruled.

### (4) Moving & Storage of Personal Property: McLaughlin Transportation Systems & Dartmouth Moving And Storage

Plainfield next objects to $38,096.78 paid to Dartmouth Moving and Storage ("Dartmouth") and $49,573.42 paid to McLaughlin Transportation Systems ("McLaughlin"). Plainfield categorically objects to these charges to the extent that they relate to the removal of personal property. Plainfield asserts that all such charges should be associated with the personal property auctions. Additionally, Plainfield objects that these moving and storage charges are duplicative and excessive. See Plainfield Response (ECF No. 81) at 4 & Ex. 3 (ECF No. 81-3).

With respect to the Dartmouth charges, the March 3, 2008 invoice (ECF No. 78 at 24/USA-000028) reflects a charge for $27,403.20.[10] This charge encompassed the initial effort to go "room by room" and inventory and box the personal items located within the Plainfield Property. DeSousa Decl. (ECF No. 87-2) ¶ 4. As explained by Special Agent Lisa Kennedy, the initial round of boxing and inventory was undertaken when there were "compelling" concerns involving squatters and break-ins. Kennedy Decl. (ECF No. 87-1) ¶ 7. The Declaration of Michael DeSousa explains that personal property "scattered and strewn throughout the Property . . . prevented the Property's interior from being properly maintained and inspected." DeSousa Decl. (ECF No. 87-2) ¶ 4. DeSousa concluded that Dartmouth's rate for this project was "fair, reasonable and superior" given the perceived hazards of the work. Id. The Court concurs with this assessment of the Dartmouth charge and concludes it was a reasonable and necessary expense for securing the Plainfield Property.

---

[10] To the extent that Plainfield included in its objection $10,693.50 paid to Dartmouth Moving and Storage (ECF No. 81-3 at USA-000221), the United States has clarified that this expense was assigned to the Lebanon Property. Thus, the Court finds this particular objection moot and considers Plainfield's objections only as it relates to the Dartmouth charges allocated to the Plainfield Property. See U.S. Reply (ECF No. 87) at 3.

With respect to the amounts paid to McLaughlin, these charges were incurred after the first failed auction in preparation for the second auction. The Court initially notes that while the three McLaughlin invoices total $49,573.42,[11] it appears that only eighty-five percent of that amount has been apportioned to the Plainfield Property. See Sweeney Decl. (ECF No. 77-5) ¶¶ 3-7 & ECF No. 77-6. Having reviewed the McLaughlin invoices, the Court is satisfied that a charge of $42,137.40 (a deduction of $7,436.02 off of the total invoiced amount) reflects the reasonable costs associated with the need to remove the previously boxed personal property from the Plainfield Property in preparation for the second auction. In reaching this conclusion, the Court credits the entirely credible explanation contained in the Declarations of Roger Sweeney, who was responsible for conducting the sale in this case. See Sweeney Decl. (ECF No. 77-5) ¶ 6; Sweeney Decl. (ECF No. 87-4) ¶¶ 4-11. The Court notes that there was general agreement in preparation for the second auction that the personal property would need to be removed in order to sell the Plainfield Property. See Second DeMello Decl. (ECF No. 87-5) ¶ 6(b).

Generally, the Court concurs with the United States that the costs associated with boxing and eventually removing personal property should be deemed expenses that were necessary to sell the Plainfield Property. While these costs were undeniably significant, the Court does not believe the charges by Dartmouth and McLaughlin were excessive given the hazards and restrictions that came with the Plainfield Property and the number of personal items removed. See Sweeney Decl. (ECF No 87-4) ¶ 8 (noting the Plainfield Property had "at least 5 times more personal items than would be expected in an ordinary personal residence of similar square footage"). Thus, Plainfield's objections to the Dartmouth and McLaughlin moving charges are overruled.

---

[11] The three McLaughlin invoices include: (1) an October 21, 2015 invoice for $12,515.14 (ECF No.77-7 at 9/IRS-00009); (2) an October 1, 2015 invoice for $36,381.69 (ECF No. 77-7 at 10/IRS-00010); and (3) a November 20, 2015 invoice for $676.58 (ECF No. 77-7 at 11/IRS-00011).

### **(5) Auction of Personal Property: Nashua Police Department, Taylor Rental & Kiefer Auction Supplies**

In addition to challenging the expenses associated with removing personal items from the Plainfield Property, Plainfield questions why costs associated with the PALS decision to auction those personal items once removed should be reimbursed under Paragraph 8(b). Among the expenses that Plainfield argues should be categorized as personal property auction expenses are: (1) $2,004.83 paid to the Nashua Police Department,[12] (2) $1,948.50 paid to Taylor Rental,[13] and (3) 517.45 paid to Kiefer Auction Supplies.[14] See Plainfield Response (ECF No. 81) at 5-6 & Exs. 5-7 (ECF Nos. 81-5–81-7).

The Amended Order of Sale explicitly authorized PALS to dispose of personal property in any manner with any "proceeds of sale . . . applied to the liens of the United States." Am. Order of Sale (ECF No. 69) at 10. In accordance with that authorization, the Unites States conducted a personal property auction that "grossed about $9,000 and . . . resulted in a net loss." Sweeney Decl. (ECF No. 87-4) ¶ 14; see also U.S Reply (ECF No. 87) at 5 n.1.

While the Court recognizes that the United States has already allotted expenses to the personal property auction such that it deems that auction a net loss, in the Court's view Plainfield has properly identified additional expenses that appear to be solely associated with the personal property auction. The Court concludes that logic and fairness dictate that these expenses incurred

---

[12] Nashua Police Invoice (ECF No. 77-7 at 7). The Court notes that the invoice reflects services rendered on November 17 & 18, 2015, which means these costs were incurred after the auction of the Plainfield Property was completed.

[13] Taylor Rental Invoice (ECF No. 77-7 at 18). Upon examination of this invoice and the chart attached to the Sweeney Affidavit (ECF No. 77-6), it is apparent that the United States only paid and seeks reimbursement for $1,948.50. Thus, although Plainfield frames its objection as the full amount reflected on the Taylor Rental invoice, the Court has adjusted the amount to the actual amount paid to Taylor Rental.

[14] Kiefer Auction Supply Invoices (ECF No. 77-7 at 22-24.)

to sell the personal property after it was removed should not be allotted to the Plainfield Property. Rather, having allowed the United States to recoup the full expense of removing personal items from the Plainfield Property, the United States should assume the costs associated with undertaking a sale of the personal property for its own benefit.

Therefore, the Court sustains this objection by Plainfield and will reduce the expenses awarded under Paragraph 8(b) by a total of $4,373.28.[15]

Having considered and ruled upon each of Plainfield's remaining specific objections, the Court concludes that the United States is entitled to a total sum of $169,089.36 pursuant to Paragraph 8(b) of the Amended Order of Sale.

## III.   CONCLUSION

In accordance with the Amended Order of Sale and absent any objection, the Court hereby ORDERS that the $415,000 in sale proceeds from the sale of 27 Glenn Road, West Lebanon, New Hampshire (also known as "Property B") be distributed by the Clerk of Court as follows:

1. By agreement of the parties, it is first ORDERED that the sum of $1,370.62 shall be disbursed to the City of Lebanon, New Hampshire, to repay the costs of advertising the first unsuccessful sale of property.
2. It is then ORDERED that the sum of $80,339.78 shall be disbursed to the United States Treasury, for the expenses of sale, including any expenses incurred to secure or maintain the property.
3. Thereafter, it is ORDERED that the remaining sum of $333,289.60 shall be disbursed to the City of Lebanon, in accordance with 26 U.S.C § 6323(b)(6), for application to the accrued, unpaid real property taxes and other local assessments due and owing with respect to the property, which total $341,753.85 as of December 15, 2015.

---

[15] Because the Sweeney Declaration (ECF No. 87-4) ties the need for "caution tape" to the sale of the Plainfield Property, the Court will allow for $97.50 of the Keifer Auction charges to remain allocated to the costs associated with the Plainfield Property.  See id. ¶ 13 & ECF No. 77-7 at 22/IRS-000022.

4. The Court finds there are no remaining proceeds from this sale to be applied to the federal tax liens, the Court, or any other party.

In accordance with the Amended Order of Sale and the rulings contained herein, the Court hereby ORDERS that the $205,000 in sale proceeds from the sale of 401 Center of Town Road, Plainfield, New Hampshire (also known as "Property A") be distributed by the Clerk of Court as follows:

1. By agreement of the parties, it is first ORDERED that the sum of $1,370.62 shall be disbursed to the Town of Plainfield, New Hampshire, to repay the costs of advertising the first unsuccessful sale of property.

2. It is then ORDERED that the sum of $169,089.36 shall be disbursed to the United States Treasury for the expenses of sale, including the expenses incurred to secure or maintain the property.

3. Thereafter, it is ORDERED that the remaining sum of $34,540.02 shall be disbursed to the Town of Plainfield, in accordance with 26 U.S.C § 6323(b)(6), for application to the accrued, unpaid real property taxes and other local assessments due and owing with respect to the property, which total $232,661.26 as of December 15, 2015.

4. The Court finds there are no remaining proceeds from this sale to be applied to the federal tax liens, the Court, or any other party.

SO ORDERED.

                                                     /s/ George Z. Singal
                                                    United States District Judge

Dated this 29th day of March, 2017.